IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EUGENE WESLEY HAWKINS, II    )
                             )
v.                           )   No. 3:05-0314
                             )   Judge Nixon/Brown
JO ANNE B. BARNHART, Commissioner )
of Social Security           )

To:  The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 10), to which defendant has responded (Docket Entry No. 13). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

### I.  INTRODUCTION

Plaintiff filed his DIB and SSI applications on June 22, 2002, alleging that he had been disabled since May 30, 2002,

1

due to limited strength and coordination in his hands, and inability to handle stressful situations, a very short attention span, and speech problems (Tr. 61-62, 74, 179-181). These applications were denied at both the initial and reconsideration stages of agency review (Tr. 40-47, 185-193). Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"), which hearing was held on May 11, 2004 (Tr. 194-253). Plaintiff was represented by counsel at the hearing, during which plaintiff, his mother, examining psychologist Dr. Kenneth Anchor, and vocational expert ("VE") Jane Brenton gave testimony.

On August 16, 2004, the ALJ issued a written decision denying plaintiff's applications for benefits (Tr. 12-18). The ALJ made the following findings:

1. The claimant met the insured status requirements of the Act as of the alleged disability onset date, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has "severe" impairments, including a wrist impairment and borderline intelligence.

4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 CFR Part 404, Subpart P, Appendix One.

5. The claimant's subjective allegations of disabling pain and functional limitations are not credible.

6. The claimant retains the residual functional capacity to perform medium work, as further limited by moderate limitations in the ability to maintain concentration,

persistence or pace (GAF 60).

7.      The past relevant work as a trimmer, kitchen helper,
        fast food worker, stocker and welding machine operator
        is not precluded by the residual functional capacity.

8.      The claimant has not been disabled within the meaning
        of the Act through the date of this decision.

(Tr. 18).

On February 11, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 4-6), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD[1]

Plaintiff was born on February 15, 1972, and was thirty-two years old at the time of his hearing (Tr. 12). He completed the tenth grade of formal schooling and later received his high school equivalency diploma (Tr. 240). School records from 1985 reflect that plaintiff's behavioral issues and problems relating with peers and teachers required a psychological

---

[1]Neither party has endeavored to summarize the facts in this case. Because the plaintiff's sole challenge to the administrative decision deals with the record of his mental impairments, the limited review below focuses on those items in the record bearing on that issue.

evaluation and placement in a crisis intervention program following a number of in-school suspensions, one suspension out of school, and an incident where plaintiff attempted to choke himself and threatened similar attempts in the future (Tr. 126-136).

On July 19, 2002, plaintiff was seen by Dr. Alan Yarbrough, Ed.D., for a consultative examination related to his disability applications (Tr. 140-43). Dr. Yarbrough reported that plaintiff was accompanied by his mother to the examination, and that his personal grooming was average and his general appearance appropriate (Tr. 140). He further reported that plaintiff was generally cooperative throughout the examination, which included intelligence, memory, and academic achievement testing, and that he put forth good effort on the tasks presented. Id. Accordingly, the results of the evaluation were thought to be a valid indication of his mental abilities. Id.

Dr. Yarbrough noted plaintiff's report that he attended special education classes in elementary school, but not in high school (Tr. 141). He also noted plaintiff's report that he passes time by watching television and cutting the grass, and that he babysits his niece, can drive a car, and does light household chores such as taking out the trash. Id. His long- and short-term memory was intact, he presented with normal affect and mood, and his speech was normal. Id. Administration of the

4

Wechsler Adult Intelligence Scale-Third Edition yielded a verbal IQ score of 87, performance IQ score of 79, and full scale IQ score of 82, which scores placed plaintiff in the lower end of "low average" (versus "borderline") intelligence (Tr. 142). The Wide Range Achievement Test-Third Edition revealed that plaintiff had reading skills at the eighth grade level and arithmetic skills at the sixth grade level. Id.

Dr. Yarbrough opined that plaintiff had the ability to manage his own funds, and assessed his current global functioning at 60 on the GAF scale, indicating moderate symptomatology. He gave the following medical assessment:

> Mr. Hawkins may be experiencing mild impairment in his ability to understand as test results indicate that he is functioning in the lower part of the low average range of intelligence. Given the standard error of measurement of the WAIS-III, it is possible he is functioning within the upper borderline range of intelligence. His longterm and shortterm memory appear to be fairly intact. His concentration was intact. His social interaction appeared to be appropriate. His ability to adapt appears to be fairly intact.

(Tr. 143).

On August 28, 2002, a non-examining state agency psychological consultant reviewed Dr. Yarbrough's report and found that plaintiff's only significant work-related limitations were moderate limitations in his ability to understand, remember, and carry out detailed instructions (Tr. 150-52). He further opined that plaintiff was mildly limited in his activities of daily living and social functioning, moderately limited in

5

maintaining concentration, persistence, or pace, and had suffered no episodes of decompensation (Tr. 163).

On December 2, 2002, Dr. Kenneth Anchor, Ph.D., completed a vocational and psychological evaluation report which reflected findings based on a clinical interview and administration of a battery of psychological tests, conducted over a six and one-half hour period (Tr. 167-174). Dr. Anchor stated that plaintiff appeared "disheveled and unkempt," with "problematic" grooming and hygiene, "odd mannerisms" and noteworthy speech difficulties (Tr. 168). He found plaintiff's "reality contact marginal" and stated that plaintiff was "not entirely oriented in all spheres." Id. Dr. Anchor found evidence of serious cognitive impairment and "marked neuropsychological deficits." He rated plaintiff as "below average," "poor" or "very poor" on virtually every measure of occupational and perceptual motor skill functioning tested. His testing indicated a full scale IQ of 74 (verbal 83 and performance 66), which placed plaintiff in the "borderline range of intellectual functioning." He found evidence of "unstable" reality contact and "irrational thought processes," markedly limited activities of daily living, "confused and disorganized thinking," and "psychotic features" (Tr. 171-72). Dr. Anchor found plaintiff's testing profile consistent with that of a "seriously disabled individual" (Tr. 172). Dr. Anchor rated

6

plaintiff's functioning in all spheres as 43 on the GAF scale, indicative of serious symptoms. Id. Dr. Anchor concluded his report as follows:

> In conclusion, Mr. Hawkins lacks the unrestricted capacity for full time gainful employment due to his various vocational and psychological restrictions. The patient suffers from a diagnosable mental condition: cognitive disorder NOS with psychotic features (moderate and recurrent). Mr. Hawkins's serious psychological deficits markedly diminish his competitiveness for employability in the open labor market. Mr. Hawkins's direct access to the labor market in both the local and national economies as a competitive job applicant is poor at this time. Presently, he should be considered to have a very severe occupational disability. This patient's capacity for effectively maintaining work pace and productivity requirements is substantially diminished due to his current serious limitations.

(Tr. 173).

Dr. Anchor also testified at plaintiff's hearing (Tr. 230-242). His testimony was generally consistent with his written evaluation. Plaintiff has never sought nor received treatment for his psychological impairment.

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's

7

decision, and (2) whether any legal errors were committed in the process of reaching that decision. <u>Landsaw v. Secretary</u>, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." <u>Her v. Commissioner</u>, 203 F.3d 388, 389 (6th Cir. 1999)(<u>citing</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." <u>Bell v. Commissioner</u>, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. <u>Her</u>, 203 F.3d at 389 (<u>citing</u> <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. <u>Hurst v. Secretary</u>, 753 F.2d 517, 519 (6th Cir. 1985).

B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level

of review, the claimant's case is considered under a five-step sequential evaluation process, as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.
(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
(5) Once the claimant establishes a prima facie case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

9

rule.  Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination. Id.  In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony.  See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  See 42 U.S.C. § 423(d)(2)(B).

C.   Plaintiff's Statement of Errors

As the Commissioner notes in her brief, plaintiff essentially raises one argument: that the ALJ erred in his treatment of the report and testimony of Dr. Anchor, the examining psychologist who assessed plaintiff after a clinical interview and administration of a battery of psychological tests over a six and one-half hour period.  Dr. Anchor was certainly thorough in his analysis of plaintiff's symptoms, and unequivocally opined that plaintiff's severe mental limitations

10

left him unable to engage in substantial gainful activity. However, this opinion is not uncontradicted in the record. Consulting psychologist Dr. Alan Yarbrough, Ed.D., who like Dr. Anchor examined and tested plaintiff on one occasion (albeit for a shorter period of time), opined that he was functioning in the lower part of the low average range of intelligence, or perhaps even the higher part of the borderline range of intelligence, but assessed only moderate functional limitations at worst (Tr. 143).[3] Dr. Anchor has not had any ongoing treatment relationship with plaintiff and is therefore not a treating source, so the deference to such sources prescribed by the regulations is not in play here. See Daniels v. Comm'r of Soc. Sec., 2005 WL 2739084, at *5 (6th Cir. Oct. 24, 2005)(unpublished). Even if it were, the ALJ gave ample consideration to Dr. Anchor's report and testimony, but for a number of reasons given in his narrative decision, resolved the conflict between that report and the report of Dr. Yarbrough in favor of the latter, as it is his province to do. E.g., Wokojance v. Weinberger, 513 F.2d 210, 212 (6th Cir.), cert. denied, 423 U.S. 856 (1975). As explained below, this resolution appears to be supported by substantial evidence.

---

[3] While plaintiff argues that Dr. Yarbrough's report should have been discounted because it is incomplete, in that the spelling subtest of the Wide Range Achievement Test (WRAT-III) was apparently not administered along with the reading and arithmetic subtests, compare Tr. 142 with Tr. 171, the undersigned cannot view this minor shortcoming as undermining the other test results and conclusions reached by Dr. Yarbrough.

11

As the Commissioner notes in her brief, Dr. Anchor's report described plaintiff in rather disturbing terms:

> Throughout testing he exhibited odd mannerisms and serious speech difficulties. Reality contact was marginal and he was not entirely oriented in all spheres. The patient's appearance was disheveled and unkempt. Grooming and hygiene were both problematic. Mr. Hawkins required considerable assistance in comprehending and following test instructions. He insisted upon frequent rest breaks. The patient exhibited inappropriate social behavior with staff.
> ...

(Tr. 168). However, none of the other treating or consulting sources of record made such observations, nor did the ALJ appreciate any such difficulties at the hearing. While plaintiff takes issue with the ALJ's citation of his own observations of plaintiff during the hearing, it is clear that such observations may properly be factored into the decision, and are particularly relevant to the ALJ's credibility finding. <u>Villarreal v. Sec'y of Health & Human Servs.</u>, 818 F.2d 461, 463 (6th Cir. 1987). The ALJ's credibility finding in this case is further supported by the inconsistencies in plaintiff's reports of physical symptoms to his physicians and to the agency (Tr. 15), as well as his substantial range of daily activities, which include "helping his mother with housekeeping and shopping, moving and maintaining their yard, watching television and listening to music, and fishing and playing computer games" (Tr. 15). Plaintiff also appears to have been involved to some degree in caring for his young niece (Tr. 15-16; <u>but</u> <u>see</u> Tr. 222). While plaintiff's

12

school records detailing his deficient social skills and self-injurious behavior (Tr. 126-136) do indicate a history of some degree of emotional impairment, the fact remains that he was able to work for years at a time despite this impairment (Tr. 14-15). With no record of any mental health treatment received by plaintiff, there is no indication that any such mental or emotional impairment worsened around the time of his alleged onset date.

Finally, plaintiff argues that the ALJ's desire to discredit all evidence favorable to plaintiff is evident in his comment that the report of the non-examining state agency consultant is credible except for the finding of 1 or 2 episodes of decompensation (Tr. 13). However, it appears that both plaintiff and the ALJ were mistaken, in that the consultant's assessment did not in fact include any finding of such episodes (Tr. 163). Rather, that assessment is in line with the conclusions of Dr. Yarbrough that plaintiff has only mild to moderate mental limitations.

In short, substantial evidence supports the ALJ's resolution of the conflict between Dr. Anchor's assessment and testimony and the other record evidence bearing on the degree of plaintiff's mental impairment. Substantial evidence further supports the ALJ's ultimate conclusion that plaintiff's combination of impairments is not disabling. Accordingly, the

13

decision of the Commissioner should be affirmed.

### IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 8th day of November, 2005.

    /s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge